UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

EUGENE BAKER, et al.,                    )
                                         )
        Plaintiffs,                      )        Civil Action No. 5: 22-231-DCR
                                         )
V.                                       )
                                         )
BLACKHAWK MINING, LLC, et al.,           )        **MEMORANDUM ORDER**
                                         )        **AND OPINION**
        Defendants.                      )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Blackhawk Mining, LLC, and Pine Branch Mining, LLC ("the Mining

Companies") have moved to exclude the opinions of the plaintiffs' proposed expert pursuant

to Rule 702 of the Federal Rules of Evidence and Rule 26(a) of the Federal Rules of Civil

Procedure.  [Record No. 116]  The motion concerns the potential opinion testimony of D. Scott

Simonton, a registered professional engineer with experience in environmental and public

health protection.  The defendants' motion will be granted for the reasons outlined below.

## I.    Background

The Mining Companies have operations in Breathitt County, Kentucky.  Between July

25 and July 30, 2022, communities across eastern Kentucky suffered historic rainfall that led

to "one of the most significant, deadly floods" in the Commonwealth's history.[1]  The floods

resulted in significant damage to property and the tragic loss of life.  The plaintiffs in this

---

[1]     Steve Almasy, Jason Hanna and Michelle Watson, *At least 8 dead in eastern Kentucky flooding, and 'hundreds will lose their homes,' governor says*, CNN (July 29, 2022), *available at* https://www.cnn.com/2022/07/28/weather/kentucky-flash-flooding/index.html (last visited February 7, 2024).

matter own property in the River Caney Watershed, a mountainous community in Breathitt
County.   Each property is alleged to have experienced damage from the flooding.   Many
property owners resided along Caney Creek which is situated down the mountain from where
the Mining Companies maintain operations.

About a month after the floods ravaged the area, the plaintiffs filed this action alleging
that the defendants' mining activities increased storm water runoff into the watershed during
the historic rainfall, thus playing a causal role in damage.   In other words, they claim that the
Mining Companies caused the damage they experienced from the floods by failing to operate
safely.

After the case was removed from the Breathitt Circuit Court, the undersigned entered
a Scheduling Order which required that the plaintiffs disclose the identity of expert witnesses
and their written reports required by Rule 26(a)(2) no later than November 21, 2023.   Prior to
the expert disclosure deadline, the plaintiffs identified one expert witness, D. Scott Simonton,
together with his report entitled "Preliminary Opinion, Caney Creek Flooding, Breathitt
County, KY." [2]   [Record No. 33]

Simonton is a professional engineer having received a Ph.D. from the University of
New Mexico.   He has more than 30 years of experience "in state environmental and public
health protection regulatory agencies, private consulting, and academia."   [Record No. 122]

---

[2]     The Preliminary Scheduling Order [Record No. 15] directed the parties to complete all
written discovery by March 6, 2023.  Presumably in compliance with this preliminary deadline,
plaintiffs tendered the identity of D. Scott Simonton and his report to the Mining Companies
on February 13, 2023.   [Record No. 33]   However, the Court subsequently entered a
Scheduling Order, requiring that the plaintiffs disclose the identity of expert witnesses who
may be used at trial and any written reports by the expert witnesses as required by Rule 26(a)(2)
by November 21, 2023.  [Record No. 69]  During the intervening time, the plaintiffs did not
supplement their disclosure of expert witness material.

His report indicates that he was asked to examine the facts associated with the substantial flooding event in the Caney Creek community in late July 2022. [Record No. 33] According to Simonton, he was specifically "asked to apply [his] education, training and experience in environmental engineering to offer an opinion as to whether mining activities in the watershed increased flood peak flows and flood damage during the event." *Id*. Simonton's preliminary report contains the following five parts: (i) a background section describing the event; (ii) an analysis of mining impacts and hydrology; (iii) an overview of mining in the Caney Creek Watershed; (iv) initial opinions on the Caney Creek flood; and (v) a summary of initial conclusions. *Id*. Although the report is designated as "preliminary", it is the sole expert disclosure produced by the plaintiffs prior to the deadline to disclose such material.

The Mining Companies contend that Simonton's opinions are deficient under Rule 702 of the Federal Rule of Evidence because they "are not the product of reliable principles and methods reliably applied nor are they supported by facts and data." [Record No. 116] The Mining Companies also assert that the opinions outlined in the report do not comply with the disclosure requirements of Rule 26(a) of the Federal Rules of Civil Procedure.

## II.

### Rule 702 of the Federal Rules of Evidence

Opinions and testimony from an expert witness are admissible under Rule 702 of the Federal Rules of Evidence. F. R. EVID. 702. In considering whether the proposed opinions are admissible, the Court evaluates whether the opinions are based on sufficient facts or data,

whether the opinions are the product of reliable principles and methods, and whether the witness has applied the principles and methods reliably to the facts of the case.[3] *Id*.

In deciding whether to admit or exclude proffered expert opinions, "the court must act as a gatekeeper to ensure that the expert is duly qualified to render an expert opinion, that testimony will assist the trier of fact, and that the proffered testimony is reliable." *Logan v. Cooper Tire & Rubber Co.*, 2011 WL 3267894 (E.D. Ky July 29, 2011). Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998). However, "no definitive checklist or test" applies to a Rule 702 inquiry. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1989); *see also id.* ("The inquiry envisioned by Rule 702 is ... a flexible one."). Instead, "what matters most" is that "any relevant scientific or technical evidence must be the product of reliable principles and methods and must have been reliably applied in the case." *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021). Thus, district courts bear a fundamental responsibility of concluding whether expert evidence is reliable under Rule 702. *See Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171 (6th Cir. 2009).

As outlined in an earlier decision by the undersigned, "[f]our inquiries guide the reliability analysis: Is the technique testable? Has it been subjected to peer review? What is the error rate and are there standards for lowering it? Is the technique generally accepted in

---

[3]     The Rule provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *See* F. R. EVID. 702.

the relevant scientific community?" *Ky. Waterways All. V. Ky. Utils.*, 539 F. Supp. 3d 696,

710 (E.D. Ky. 2021) (quoting *Gissantaner*, 990 F.3d at 463). Given the premium placed on

reliability, the proponent of the expert's opinion testimony must meet this standard by a

preponderance of the evidence. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th

Cir. 2001). However, certain "[r]ed flags that caution against certifying an expert include

reliance on anecdotal evidence, improper extrapolation, failure to consider other possible

causes, lack of testing, and subjectivity." *Ky. Waterways All.*, 539 F. Supp. at *710 (citing

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012)). And when

"a purported expert's opinion was prepared solely for litigation, that may also be considered

as a basis for exclusion." *Id*. (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426,

434 (6th Cir. 2007)).

As a threshold matter, the Mining Companies argue that Simonton's opinions are not

reliable because he failed to conduct flood modeling, which is the "accepted methodology to

determine whether land disturbances caused or exacerbated flooding." [Record No. 116] For

support, they point to the *Hydrologic Modeling Bench Book* produced by the National Judicial

College.[4] The Mining Companies further note that the purpose of the bench book is to

"enhance and improve judicial understanding of the challenging issues impacting water

adjudication." [Record No. 116] As the book indicates, "natural hydrologic systems are

inherently complex" and "can rarely be described in simple terms, nor can their behavior be

predicted with anything less than a computer-based hydrologic simulation model." *Hydrologic*

---

[4]    THE NATIONAL JUDICIAL COLLEGE, HYDROLOGIC MODELING BENCHBOOK, DIVIDING
THE    WATERS    (2010),    *available    at*    https://www.judges.org/wp-
content/uploads/2020/03/DTW-Hydrologic-ModelingBenchbook.pdf.

*Modeling Benchbook,* at 26. In hydrologic systems like the one impacting the River Caney

Watershed,

> the task of attempting to establish the behavior features of the system is *rarely performed without a simulation model.* Furthermore, the complexity of the system is magnified by the fact that in almost all circumstances, certain 'inputs' to the system like river flows and precipitation are not predictable with any certainty and must be treated probabilistically.

*Id.*

In many courts, "[c]omputer-based hydrologic models have proven helpful, in fact

essential, in a variety of water disputes." *Id.* Seemingly in agreement, the studies that

Simonton reviewed and conducted in his preliminary report likewise cite flood modeling as a

particularly useful tool in reaching conclusions. This signals that the method is potentially an

indicator of the industry standard. *See, e.g. Union Pac. R.R. Co. v. Winecup Ranch*, 2020 WL

7125918 (D. Nev. 2020 Dec. 4, 2020) (holding that the HEC-HMS hydrologic model is the

"industry standard used by the Army Corps of Engineers. . .to simulate and re-create

hydrologic process of watershed systems" and that "HEC-HMS and HEC-RAS are probably

the most extensively applied water-related modeling systems in the world."); *Funderburk v.*

*S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 713-14 (D.S.C. 2019) ("[B]ecause HEC-RAS has

been explicitly endorsed and general[ly] accept[ed] by government agencies and private firms

operating within this specialized field, the court finds that this factor endorses the reliability of

[the expert's] methodology, and the court accords this factor great weight.")

Although hydrologic modeling has been routinely used by engineers—and its use has

been recognized by courts as an indicator of an expert's reliability—the method is not required

before a court may admit an expert's opinions in a case like the present. But Simonton, an

engineer who has been an expert witness in other cases involving environmental factors, has

recognized the enlarged importance of hydrologist modeling to show that changes in surface

land conditions from mining operations caused an increase in water runoff.  His preliminary

report references multiple studies that he conducted to analyze the effects of mining on

hydrology in Pikeville, Kentucky, Middlesboro, Kentucky, and Mingo County, West Virginia.

Three of the five studies he cited involved hydrologic modeling, signaling that even Simonton

believes the method is not only reliable but the industry standard.

However, there is little need to take the Court's word for it.  Simonton previously

testified that an expert in his field cannot reach conclusions about the impacts of surface

disturbances on flooding without first conducting modeling of some kind.  In one matter where

he discussed the impacts of water flows as an expert witness, Simonton admitted that he had

"never seen [an opinion] where modeling wasn't included" before adding that modeling "is

kind of the standard."[5]  [*See* Record No. 116]  Separately, Simonton opined in a case related

to floodplain changes that "models must be developed" which suggests that accurately

measuring the impact of a surface disturbance on water flows typically involves hydrologic

modeling to enhance reliability.[6]  *Id*.

Conversely, the plaintiffs claim that hydrologic modeling "is not an end-all requirement

of the admissibility of expert testimony."  [Record No. 122]  They even describe the assertion

---

[5]      Dep. of D. Scott Simonton, *Vanessa Allen, et al. v. LG&E, et al.*, File No. DOW-19-1-0319, Commonwealth of Kentucky Energy & Environmental Cabinet dated July 16, 2020, at pp. 103-109.

[6]      Simonton offered his opinions in both of these matters for the purpose of *predictive* modeling to project *future* water flows.  However, it is undeniable that expert testimony discussing the impacts of land disturbances on past water flows has regularly, if not routinely, involved hydrologic modeling based on the method's accepted reliability in courts across the country.

that modeling is the industry standard in cases like this one as a "gross misunderstanding of industry practices." *Id*.  But they offer no reliable authorities to support this assertion.  The plaintiffs also fail to cite any precedent suggesting an expert's opinions on the hydrologic impacts on water flows from surface mining is reliable without any specific testing on the site at issue.

In defense of Simonton's "testing" methods, the plaintiffs argue that his "classical engineering techniques" include aerial observation, third-party eye-witness accounts of the flooding, and a review of his own "modeling and permit files." [Record No. 116]  Rather than assuring the Court that these methods are reliable, they use significant real estate in their brief to argue that Simonton's findings indicate *per se* negligence.[7]

As courts across the country have come to recognize, it is difficult to endorse the reliability of an expert whose opinions regarding the impacts of water flows on mined surfaces does not involve sophisticated modeling or site-specific testing.  This Court has noted before that the lack of testing, in particular, is a red flag that cautions against certifying an expert's opinions.  Without more than citations of past studies on terrain located outside the River Caney Watershed and unscientific opinions based merely on first-hand observations, the Court waives a red flag in performing its gatekeeper function to ensure that the proposed expert's opinions are reliable.  If the plaintiffs had supplemented Simonton's preliminary report, perhaps they could show that his opinions were based upon sufficient data and the product of

---

[7]     The Court's analysis focuses on the admissibility of Simonton's proposed opinions. The plaintiffs have not filed a motion for summary judgment under the theory that his expert opinions indicate *per se* negligence by the Mining Companies in causing the flood damage. However, a party's theory of *per se* negligence does not supersede the reliability requirements of admitting an expert's opinions under Rule 702 of the Federal Rules of Evidence.

reliable methods accepted by the industry.  Or perhaps not.  However, they made no effort to ensure that his preliminary report could meet the requirements of admissibility without supplementation.

The Mining Companies next contend that Simonton's opinions are based primarily on examinations of water flows impacting terrain in locations other than the River Caney Watershed.  In effect, they question the relevance of the studies upon which Simonton purportedly relied.  The defendants' theory is that Simonton cannot apply the principles and methods tested in a separate location with unique topological characteristics and conditions to the instant case without some form of testing providing a connection.

The Supreme Court has recognized that an expert's opinion may be excluded if there "is too great an analytical gap between the data and the opinion offered." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 1366, 147 (1997).  An expert's overbroad extrapolation of data and "reliance on anecdotal evidence" are recognized by courts as examples of bridges too far. *See Ky. Waterways All.*, 539 F. Supp. at *710.  Additionally, the lack of testing provides yet another indication that an expert has not utilized a reliable method to form admissible opinions. *Id*. When these factors are presented together, they weigh in favor of excluding an expert's opinion.

Here, the Mining Companies essentially argue that Simonton's report fails across the board.  In their view, Simonton attempts to "use the results of studies and publications regarding other locations to say that there must be a link between mining and flood damage in this case." [Record No. 126] Notably, the plaintiffs do not dispute this observation.  However, they claim that the Mining Companies "neglect[] to acknowledge Simonton's firsthand analysis of the site and the generally acknowledged usefulness of outside studies to confirm or

deny a scientific hypothesis." [Record No. 122]  In other words, the plaintiffs claim that the studies provide Simonton with a reliable basis to form conclusions because they examine storm water's impacts on similar topography in the Appalachian Mountains subject to surface and strip mining.  But the Court observes that the studies Simonton briefly details in his preliminary report are presented in remarkably general terms—and often involved hydrologic testing or modeling to reach conclusions.

Of course these studies alone are not the only sources of information from which Simonton drew his opinions.  His report cites first-hand aerial observations of the Caney Creek flooding in the weeks after the event, as well reviews of relevant precipitation data and examinations of Google Earth imaging over an extended period.  But without any demonstrable testing or modeling based specifically on the mining sites that purportedly led to the devastation, Simonton's report falls victim to the kind of "anecdotal evidence" and "improper extrapolation" that warrants exclusion.

Finally, the Mining Companies contend that Simonton's report fails to properly exclude potential alternative causes of the damage that plaintiffs suffered.  This Court has also acknowledged previously that an expert's failure to adequately consider alternative causation is another red flag that cautions against admissibility.  *See Ky. Waterways All.*, 539 F. Supp. 3d at 710.  Here, the Mining Companies claim that "Simonton presents no analysis of water flows (pre or post mining) and completely failed to consider an obvious alternative cause of the [p]laintiffs' claimed damages" other than waterflow caused by a land disturbance.  [Record No. 116]  But the plaintiffs argue that Simonton's consideration of how "the heavy rainfall had a disparate effect when compared to an undisturbed watershed" amounted to his exclusion of the rainfall as the primary causal factor in causing the flood damage.  While Simonton may

have implicitly ruled out alternative causes in the process of concluding that the Mining Companies were to blame for exacerbating the flooding, the fact that his report was merely preliminary may explain why he did not explicitly rule out, for example, the historic rainfall as causal in clearer detail.

Tying the foregoing analysis together leads the Court to conclude that the plaintiffs submitted an undeveloped expert disclosure that does not meet the required standard for admissibility. Simonton's preliminary report is not based upon sufficient facts or data about the specific mining sites. And he did not rely upon any form of scientific modeling or testing to reach conclusions. Finally, Simonton struggles to apply principles and methods reliably to the facts of the case by relying on extrapolations from studies conducted on sites outside of the River Caney Watershed. Although Simonton has offered expert testimony in other cases, the opinions outlined in his preliminary report in this case does not meet the reliability requirements that Rule 702 demands of expert witnesses.

### A.  Rule 26(a) of the Federal Rules of Civil Procedure

The Mining Companies also argue that Simonton's opinions should be excluded under Rule 26(a) because the plaintiffs failed to meet disclosure requirements. The rule requires that an expert's disclosure include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

The Mining Companies assert that Simonton's report does not contain a complete statement of the opinions he plans to offer, as well as a basis and reasons for his opinions. An expert opinion must "outline a line of reasoning arising from a logical foundation." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC,* 2014 WL 1664263, at *4 (E.D. Ky. Apr. 25, 2014) (citing *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005)). Further, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.* Courts are "not required 'to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert.'" *Kilgore v. United States*, 2023 WL 2898415, at *4 (E.D. Ky. Apr. 11, 2023); *Ky. Waterways All.*, 539 F. Supp. at 713. When an expert disclosure is deficient under Rule 26(a), exclusion is "mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R. R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010); *see also Scatuorchio Racing Stable*, 2014 WL 1664263, at *4 ("When a party does not comply with Rule 26(a) or (e), it is not allowed to use that information. . .to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.")

As this Court has repeatedly noted, the subject report disclosed by the plaintiffs is captioned "preliminary." Simonton's preliminary report contains a summary of opinions based on his *initial* evaluation of the topography of the mountainous terrain in the Caney Creek area, the existing sediment control structures in place at the Mining Companies' operations, and the sedimentary conditions that led to flooding. But the fundamental problem is that Simonton offered them as a "summary of *initial* preliminary opinions" without providing any

- 12 -

form of supplementation thereafter.  The disclosure rule is clear: a party has an obligation to disclose "a *complete* statement of all opinions the witness will express."  FED. R. CIV. P. 26(a)(2)(B)(i).  Requiring the disclosure of an expert's opinions in totality not only allows an opposing party to adequately prepare their case but helps triers of fact ensure that the expert's opinion will not mislead or confuse the jury.  Here, the plaintiffs fall woefully short.

The Mining Companies argue that Simonton's preliminary report is not only incomplete but also reaches a variety of conclusions without identifying the reasoning behind them.  They observe that Simonton concluded mining had occurred in the River Caney Watershed, hydrologic modeling had been conducted in areas outside of this particular watershed, erosion had occurred in the watershed, and the surface area of a nearby sediment pond had experienced a reduction.  But Simonton provides no direct basis regarding how he reached these conclusions.

Within this circuit, courts may exclude an opinion supported only by the *ipse dixit* of the expert.  *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001).  This requires principle requires that an expert rely on more than his own thoughts and observations to reach informed conclusions.  However, the studies Simonton referenced indicate that surface mining and improper design, construction, or maintenance of sediment and runoff controls may lead to additional damage caused by flooding.  To the extent he relied upon that body of information (which is presented in an entirely separate section of his report) in forming his conclusions, Simonton's report likely complies with the rule's subpart.  But compliance here does not change that fact that Simonton provided only a "preliminary" summary of conclusions despite the command that experts must disclose opinions they may offer in their entirety.  As a result, the plaintiffs' expert disclosure is deficient under Rule 26(a)(2)(B)(i).

Next, the Mining Companies contend that the plaintiffs have failed to produce all facts and data considered by Simonton or the exhibits that he claims support his opinions. The plaintiffs argue in their response that "counsel has forwarded all information referenced in Simonton's report." [Record No. 122] The Mining Companies note, however, that the plaintiffs only provided this information after the defendants filed their motion to exclude—and months after the deadline for providing expert disclosures had passed. Yet, the plaintiffs argue that much of the information considered by Simonton is available in the public domain.

The duty to produce relevant information during discovery is enforced by a deadline. The plaintiffs may believe that disclosing a selective tranche of information at a time of their choosing can cure a Rule 26(a) deficiency, but deadlines matter notwithstanding such contrary beliefs. Just as "allowing a party to remedy a deficient report through a later deposition would counter the goals of Rule 26(a)," so too would allowing the delayed disclosure of data and facts considered by the expert in formulating his opinions. *See Scatuorchio Racing Stable,* 2014 WL 1664263, at *4. In summary, Simonton's expert report also is deficient under Rule 26(a)(2)(B)(ii).

Finally, the Mining Companies argue that the plaintiffs failed to provide a comprehensive list of all cases in which Simonton has testified during the previous four years as required by Rule 26(a)(2)(B)(v). But the plaintiffs seemingly mock this contention by stating that, "because Simonton forgot to painstakingly list out his judicial involvement in the prior [four] years… his testimony is worthless." Once again, however, the rule's command is clear. And when a proposed expert like Simonton fails to provide a full accounting of the cases in which he has participated during the specified period, the Court must draw the inevitable conclusion that the disclosure is deficient.

- 14 -

It is well-recognized that "[t]he purpose of Rule 26 disclosures of witnesses, both fact witnesses and expert witnesses, is to enable the parties to adequately prepare for trial." *McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 932 (E.D. Ky. 2014).  When a party has failed to satisfy its obligations under this rule, it bears the burden of proving its noncompliance was substantially justified or harmless.  As the Sixth Circuit has observed, "[h]armlessness. . . is the key under Rule 37." *See Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (noting that the rule offering sanctions against a party that fails to make disclosures or cooperate in discovery includes the sanction of exclusion).  Here, the plaintiffs disclosed Simonton as their proposed expert witness nearly one year ago.  Yet, they failed to supplement his expert report to bring his material into compliance with Rule 26(a) during the intervening period.  By failing to provide a complete statement of all opinions that Simonton planned to express, the facts and data he considered in reaching his opinions, and an accurate list of all other cases in which he testified as an expert, the plaintiffs short-circuited their obligations under Rule 26(a).

Ultimately, the plaintiffs have made only a minimal effort to explain the failure to disclose critical components of Simonton's expert material, even though withholding this information undoubtedly prejudiced the Mining Companies in formulating their defense. Their failure to comply with this disclosure requirement was not harmless.  The appropriate sanction is excluding Simonton's expert opinions in this matter pursuant to the commands of Rule 26(a).

### III.    Conclusion

The plaintiffs produced Simonton's preliminary expert report without supplementation after their initial disclosure.  Only after the deadline for disclosing expert witness material had

passed did they attempt to cure the significant deficiencies contained in the report. The plaintiffs' failures violate the requirements which are designed to ensure that all parties receive fair treatment. Here, the appropriate recourse for the plaintiffs' shortcomings is exclusion of Simonton's opinions under Rule 702 of the Federal Rules of Evidence and Rule 26(a) of the Federal Rules of Civil Procedure.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      The defendants' motion to exclude the proposed expert opinions of D. Scott Simonton [Record No. 116] is **GRANTED**.

2.      The defendants' motion to extend the Scheduling Order to depose D. Scott Simonton [Record No. 129] is **DENIED** as moot.

3.      The plaintiffs' motion for a protective order to prevent the defendants from deposing D. Scott Simonton [Record No. 130] is **DENIED** as moot.

Dated: February 15, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky