UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CASE NO. 5:22-cv-231-DCR

| | |
|---|---|
| EUGENE BAKER, et al. | ) |
| | ) |
|       **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| BLACKHAWK MINING, LLC, and | ) |
| PINE BRANCH MINING, LLC | ) |
| | ) |
|       **Defendants.** | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR FULL SUMMARY JUDGMENT**
\*\*\*\*\*\*\*\*\*\*

Defendants Blackhawk Mining, LLC ("Blackhawk") and Pine Branch Mining, LLC ("Pine Branch"), by and through counsel, and for their Reply in Support of their Cross-Motion for Full Summary Judgment ("Motion"), state as follows:[1]

## **INTRODUCTION**

"It is basic hornbook law that legal causation is an essential element" of any claim for negligence, including negligence per se. *Snawder v. Cohen,* 749 F. Supp. 1473, 1479 (W.D. Ky. 1990); *Gordon v. Turner,* Civil Action No. 13-136-DLB-CJS, 2016 U.S. Dist. LEXIS 84317, at *24-25 (E.D. Ky. June 29, 2016) (even if a plaintiff could establish a breach of a statutory duty of care, "Kentucky law still requires her to prove cause and injury."). First, Plaintiffs fail to address, let alone, point to any admissible evidence of causation. Second, in a case such as this, expert proof on causation is required. Plaintiffs do not have an expert who can testify that Defendants caused

---

[1] Blackhawk filed a separate Motion for Summary Judgment on All Claims Asserted Against Blackhawk Mining, LLC. (DE 143). Plaintiffs failed to respond to this motion and it is, therefore, uncontested. While Blackhawk and Pine Branch are collectively referred to herein as "Defendants" for purposes of the Motion at issue (filed by both Defendants), Blackhawk maintains that it has no role in this case and would request that the Court grant its separate motion for the reasons set forth in DE 143.

or contributed to the Plaintiffs' claimed damages. While not necessary to prevail on this Motion, Defendants have expert hydrologic evidence that definitively establishes that Pine Branch's mining activities did not cause (or exacerbate) Plaintiffs' flood damage. (DE 142; DE 142-1). In fact, Defendants' expert hydrologic modeling calculates that the mining operations *decreased* peak flow, flood surface area, and flood depths in the River Caney watershed. (DE 142-1, pp. 16-26). Plaintiffs' lack of scientific evidence coupled with Defendants' undisputed expert evidence refuting causation are each sufficient grounds to grant summary judgment and dismiss this case without further argument.

In addition to their failure to prove causation, Plaintiffs have also failed to prove that the Defendants breached any duty of care. Plaintiffs concede that their negligence per se claims derive solely from Kentucky's mine permitting regulations. However, Plaintiffs fail to address the requirement that administrative final orders be issued on those alleged regulatory violations to support a claim of negligence per se. *Vander Boegh v. Bank of Oklahoma,* 394 S.W.3d 917 (Ky. App. 2013). Instead, they attempt to remedy the fatal flaw by asserting claims against (a non-party) the Kentucky Energy and Environment Cabinet ("Cabinet") for negligently enforcing regulations and make wholesale distortions of the record. (Id. at pp. 5-11). These baseless attacks do not save Plaintiffs' claims from dismissal and unsupported allegations against a government agency do not support a claim against the Defendants.

Finally, Plaintiffs fail to refute Defendants' arguments that Plaintiffs' claims are not within the protections of the regulations cited, rendering them improper for negligence per se liability. (DE 149, pp. 4-5, 12-15). Instead, Plaintiffs argue that they can maintain these claims because there are no separate civil remedies under the statutory and regulatory scheme. (DE 149, pp. 4-5). However, such a claim does nothing to satisfy the requirement that the Plaintiffs be within a

specific group of persons intended to be protected by a statute or regulation to assert a negligence per se claim.

In sum, Plaintiffs' Response fails to create a genuine dispute of material fact, and therefore, Defendants' Motion (DE 142) should be granted.

## ARGUMENT

I. **Plaintiffs Failed to Offer the Requisite Evidence on Causation, and the Only Competent Evidence Relating to this Element Demonstrates that Defendants did not Cause or Exacerbate Flood Damage.**

In their Response, Plaintiffs concede that the only "theory under which [they] seek recovery is under Per Se Negligence." (DE 149, p. 2).[2] The law is clear that even under a negligence per se theory, causation is a key element, just like it is with any other claim for negligence. Plaintiffs fail to even address causation in their Response, let alone proffer the expert proof needed on the issue. Moreover, Defendants have offered uncontroverted expert evidence that utilizes hydrologic modeling to definitively show that mining decreased flooding in the watershed. For these reasons, Plaintiffs' claims should be dismissed on causation grounds.

   *A. Causation is a distinct element of Plaintiffs' claims, and they must offer proof on that element at summary judgment.*

Instead of addressing the issue of causation, Plaintiffs merely revert to the duty question and attempt to conflate duty with causation. As stated in Plaintiffs' brief "[t]he only germane determination to be made here is whether Defendants violated state regulations aimed at protecting the public. As was discussed in Plaintiffs' MPSJ and will be recited below, Defendants have clearly

---

[2] By not raising them in response to Defendants' Motion, Plaintiffs have abandoned the other claims they pleaded in the operative Third Amended Complaint. (DE 70). Even if that were not the case, Plaintiffs must still prove causation for every claim they pleaded, which they have failed to do. *Readnour v. Gibson*, 452 S.W.3d 617, 620 (Ky. App. 2014); *Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. App. 2004); *Stathers v. Garrard County Bd. of Educ.*, 405 S.W.3d 473, 479 (Ky. App. 2012); *Pete v. Anderson*, 413 S.W.3d 291, 304 (Ky. 2013) (Noble, J., concurring in part and dissenting in part); KRS 446.070; KRS 350.421(2).

3

done so and therefore the issue of liability and causation for the Plaintiffs' damages is plainly in favor of the Plaintiffs as a matter of law." (DE 149, pp. 2-3). Plaintiffs are simply wrong in their analysis of Kentucky law on negligence.

While the doctrine of negligence per se replaces a common law standard of care with a statutory (or regulatory) standard, it leaves the separate element of causation unaltered. E.g., *Bunche v. United States*, No. 5: 16-311-DCR, 2019 U.S. Dist. LEXIS 153704, at *11-12 (E.D. Ky. Sept. 10, 2019) (applying Kentucky law to an FTCA claim and finding that "injury and legal causation remain elements of [the plaintiff's] claim and are unaltered by the doctrine of negligence per se"); *Infinity Energy, Inc. v. Henson*, NO. 2016-CA-000518-MR, 2019 Ky. App. Unpub. LEXIS 374, at *19-20 (Ky. App. May 24, 2019) ("Proof even of a statutory violation does not get a party claiming negligence per se over the causation hurdle . . . . Failure to prove causation is fatal to Infinity Energy's negligence per se claim.") (citations omitted); *see also* KRS 446.070 ("A person injured by the violation of any statute may recover from the offender such damages as he *sustained by reason of the violation*") (emphasis added).[3] Even if Plaintiffs could demonstrate regulatory violations germane to their negligence per se claims (and they cannot), they must offer proof on causation to survive summary judgment. *Gordon*, 2016 U.S. Dist. LEXIS 84317, at *25 ("Even if Gordon could demonstrate that Universal Fleet breached a statutory duty, Kentucky law still requires her to prove cause and injury. *Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. Ct. App.

---

[3] At the same time that Plaintiffs contend that it is not necessary for them to address the issue of causation in the context of a negligence per se claim, their recitation of the law on negligence per se makes clear that causation is a crucial element of their claim. *See, e.g.,* DE 149 at p. 2 ("Here, the Plaintiffs have no need for an expert to recover under a per se negligence theory, as illustrating that the Defendants have violated their standard of care with regard to safety-oriented regulations **resulting in injury** to people or property entitles them to private recovery, without any requirement that they use expert fact determinations.") (emphasis added). Plaintiffs also cite to *Hargis v. Baize,* 168 S.W.3d 36 (Ky. 2005). Notably, *Hargis* is explicit that "[t]he violation of a statute does not necessarily create liability. The statute must have been specifically intended to prevent the type of occurrence that took place, and *the violation must have been a substantial factor in causing the result*." *Hargis,* 168 S.W.3d at 46 (emphasis added).

4

2004). As the Court explained above, Gordon has fallen far short of establishing a causal connection . . . Universal Fleet is therefore entitled to summary judgment on Gordon's negligence *per se* claim."). Plaintiffs have failed to offer this necessary evidence and therefore summary judgment is warranted.

### B. *Plaintiffs lack the expert proof necessary to support causation.*

In a case involving flood damage allegedly resulting from a manmade disturbance, the proof on causation requires expert evidence. Plaintiffs admitted as much in their Answers to Interrogatories. (DE 141-6, at Answer to Int. No. 8). Even if they had not, case law overwhelmingly requires expert testimony to prove causation in flood cases like this. E.g., *Cox v. Tennessee Valley Auth.*, 989 F.2d 499, 1993 U.S. App. LEXIS 5875, at *11 (6th Cir. Mar. 15, 1993) (unpublished table opinion); *Hendricks v. United States*, 14 Cl. Ct. 143, 149 (Fed. Cl. 1987); *Devonwood-Loch Lomond Lake Ass'n Inc. v. Cty. of Fayetteville*, No. 5:18-CV-270-D, 2021 U.S. Dist. LEXIS 147653, at *12 (E.D.N.C. Aug. 6, 2021); *Garr v. Cty. of Ottumwa,* 846 N.W.2d 865, 872 (Iowa 2014); *Davis v. Cty. of Mebane*, 512 S.E.2d 450, 504-05 (N.C. Ct. App. 1999); *see also Commonwealth, Dep't of Highways v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967) (*citing Louisville & N.R. Co. v. Conn*, 200 S.W. 952 (Ky. 1918)); Fed. R. Evid. 701(c).

The requirement of expert proof is logical on its face as the proof of causation is complex and not within the common understanding of a typical juror. Courts have acknowledged that one must consider "before and after" conditions to assess whether a land disturbance, such as surface mining, caused or exacerbated flood damage. *See St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1363 (Fed. Cir. 2018); *Devonwood-Loch Lomond Lake Ass'n Inc.*, 2021 U.S. Dist. LEXIS 147653, at *13; *see also, e.g., Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 713 (D.S.C. 2019); *Alost v. United States*, 73 Fed. Cl. 480, 493 (Fed. Cl. 2006), *aff'd sub nom.*

5

*Morgan v. United States*, 254 F. App'x 823 (Fed. Cir. 2007); *Watkins v. Lawrence Cty.*, No. 3:17-cv-00272-KGB, 2020 U.S. Dist. LEXIS 88931, at *13 (E.D. Ark. May 19, 2020). This type of analysis is beyond the ken of a lay witness or juror. That is particularly true in this case, which involves consideration of pre- and during- mining water flows across thousands of acres comprising the River Caney watershed. (DE 142-1, p. 8).

Plaintiffs do not have a competent expert on the issue of causation. As a result, and in an attempt to side-step that fatal defect, Plaintiffs recycle their erroneous contention that they do not need to prove causation as an element of their claims for negligence per se. (DE 149, p. 3) (arguing that the "purpose of an expert in this matter would be to determine an issue of fact (i.e. the exact impact of Defendants' operations on the July 2022 rainfall event) rather than one of law (i.e. the liability of the Defendants under KRS 446.070) and as such is immaterial in the current Summary Judgment determination."). Not only is causation a necessary element of their claim (for which Plaintiffs carry the burden), but courts often grant summary judgment when a plaintiff has not or cannot offer the expert proof needed to establish an essential element of a claim like causation. *Gregory v. Burnett*, 577 F. App'x 512, 520 (6th Cir. 2014); *Snowden v. Speedway LLC*, NO. 5:18-425-KKC, 2021 U.S. Dist. LEXIS 228192, at *17 (E.D. Ky. Nov. 30, 2021); *Snyder v. Am. Honda Motor Co.*, NO. 6:07-241 KKC, 2009 U.S. Dist. LEXIS 65325, at *18-19 (E.D. Ky. July 28, 2009). And needless to say, causation "becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference."[4] *Modern Holdings, LLC v. Corning, Inc.*,

---

[4] It is also not clear why, as Plaintiffs seem to suggest, the "exact impact of Defendants' operations on the July 2022 rainfall event" (i.e., causation) would be an "issue of fact" while "liability . . . under KRS 446.070" would be a legal question. What they frame as arguments on "liability" are, for the most part, just arguments regarding breach of regulatory standards of care. (DE 139; DE 149). Of course, breach is a "question of fact". E.g., *Modern Holdings, LLC*, 2022 U.S. Dist. LEXIS 55203, at *39; *Simons v. Strong*, 978 F. Supp. 2d 779, 785-86 (E.D. Ky. 2013). But like causation, it can be subject to summary judgment where there is no genuine dispute of material fact on the element. *See Modern Holdings, LLC*, 2022 U.S. Dist. LEXIS 55203, at *39-41.

6

No. 5:13-cv-00405-GFVT, 2022 U.S. Dist. LEXIS 55203, at *41 (E.D. Ky. Mar. 28, 2022) (quoting *Kelly v. Arrick's Bottled Gas Serv., Inc.*, NO. 14-118-DLB-EBA, 2016 U.S. Dist. LEXIS 124752, at *16-17 (E.D. Ky. Sept. 14, 2016)).

### C. *Defendants' expert proof on causation is undisputed.*

Unlike the Plaintiffs, Defendants have offered competent expert proof disproving causation. Defendants rely on their expert, Michael Ricci's, findings. The hydrologic analysis conducted by Mr. Ricci, a professional engineer, serves as the only competent evidence of surface mining's impact on flooding in River Caney during the July 2022 storm event. (DE 142; DE 142-1). Mr. Ricci conducted HEC-HMS and HEC-RAS modeling for the River Caney watershed, and the results demonstrate that mining operations actually *decreased* peak flow into the watershed, decreased the flood surface area, and decreased the flood depths as compared to what would have been observed under pre-mining conditions. (DE 142-1, pp. 16-26). Plaintiffs do not contest or even *mention* Mr. Ricci's findings in their Response. (DE 149). Nor do they question his qualifications to offer expert testimony. (Id.). As such, his findings are uncontroverted expert evidence that Pine Branch's mine did not cause or exacerbate Plaintiffs' flood damage, supporting judgment as a matter of law on all claims.

Plaintiffs can only contend that "[t]he sheer degree of injury experienced by the Plaintiffs in the current action" could not have occurred without Defendants' negligence and supports a finding of causation. (DE 149, p. 3). That conclusory assertion does not amount to proof, and Mr. Ricci's analysis is scientific evidence of the opposite. Mr. Ricci's modeling establishes that mining decreased flooding in the River Caney watershed using July 2022 rainfall data from the closest available rain gauge to River Caney. (DE 142-1, pp. 11-12, 16-26). The results of his modeling are conclusive that the 1,000-year rain event would have resulted in *worse* flooding in River Caney

without the contours that the mining in the watershed created.[5]

The conclusion that the storm alone was capable of inflicting the harms claimed by Plaintiffs, is bolstered by the destruction suffered throughout much of eastern Kentucky, and far away from Pine Branch's mine site, during the July 2022 rain event. Dozens of individuals well outside of the River Caney watershed lost their lives, and hundreds lost their homes. *See Siblings, grandparents, coal miners. These are the 45 victims of the 2022 Eastern KY floods*, available at https://www.kentucky.com/news/state/kentucky/article277457683.html; *Housing Damage from the 2022 Kentucky Flood*, at p. 8, available at https://ohiorivervalleyinstitute.org/wp-content/uploads/2023/02/Housing-Damage-from-KY-2022-Flood.pdf. And the fact remains that while these areas received torrential rain, the River Caney area experienced even more. (DE 142-3, pp. 3-6).

Defendants sympathize with Plaintiffs' experience. But Plaintiffs cannot create a claim against Defendants based on the "sheer degree of injury," when the expert evidence of record demonstrates that the blame lies with a historic rain event that devastated an entire region, not the Defendants. *See Russell Fork Coal Co. v. Hawkins*, 223 S.W.2d 887, 892 (Ky. 1949); *Fife v. Chesapeake & Ohio Ry. Co.*, 211 S.W.2d 854, 855-56 (Ky. 1948).

---

[5] Plaintiffs claim that Defendants' "reference[] to the historic rainfall is misplaced", relying on the affidavit of a single lay witness, Plaintiff Monica Fugate, to argue that most of the rain fell after the damage was caused by a "deluge of rapidly moving water". (DE 149, pp. 11-12; DE 147-1). However, this argument does not call into question Mr. Ricci's expert findings. Mr. Ricci utilized actual rainfall data from the closest available rain gauge to conduct hydrologic modeling. (DE 142-1, pp. 11-12). The uncontroverted results of the modeling using this data prove that mining activities did not cause or exacerbate Plaintiffs' damage. Similarly, Ms. Fugate's affidavit does not does not contain: (a) any measurements (or even discussion) regarding *how much* rain fell (and how quickly it fell) *before and during* the time flood waters began to damage her home, let alone the homes of any other Plaintiffs in this case; or (b) any information to support an inference that the same devastating damage would not have occurred absent mining in the watershed. (DE 147-1, p. 1). Finally, Ms. Fugate's observations are common for flash flooding, i.e., the weather phenomenon that occurred in River Caney. Flash floods "are usually characterized by raging torrents after heavy rains" and can occur "within minutes or a few hours of excessive rainfall." *Severe Weather 101, Flood Types*, available at https://www.nssl.noaa.gov/education/svrwx101/floods/types/. There is nothing unusual about her observations that the flooding occurred rapidly and that it continued to rain for several hours. Nor is there anything to suggest that negligence necessarily caused or exacerbated flooding.

## II. Plaintiffs Have Failed to Establish that Pine Branch Committed Actionable Regulatory Violations.

Plaintiffs' arguments regarding alleged regulatory violations (i.e., the breach element of their negligence per se claims) are rehashed versions of prior arguments. (DE 139; DE 149). Defendants have addressed these points in their Motion and maintain their arguments regarding why Plaintiffs cannot prove a relevant violation of any regulation as a matter of law. (DE 142, pp. 17-24). Still, several points regarding the Response warrant a brief discussion. These points include Plaintiffs' failure to address authority holding that a final order from the Cabinet is required before a regulatory violation related to mining can serve as a basis for negligence per se and Plaintiffs' distortion of the record to prove violations that simply don't exist.

### A. *Plaintiffs fail to address Vander Boegh.*

First, Plaintiffs do not address Defendants' primary argument that under *Vander Boegh* Plaintiffs cannot claim violation of a mining regulation without showing that a final order evidencing a violation has first been issued by the Cabinet. *Vander Boegh* held that private parties (such as Plaintiffs) and courts lack the authority to make determinations on alleged violations of mining laws absent prior final orders from the Cabinet regarding such violations. *Vander Boegh*, 394 S.W.3d at 930-31. Plaintiffs freely admit that the Cabinet did not issue initial notices of noncompliance ("NNCs") regarding potential violations for most of the regulations they rely upon, let alone final orders affirmatively finding violations. (DE 149, p. 7 ("Plaintiffs agree with Defendants that most violations of 405 KAR asserted lack NNCs")). But rather than substantively grapple with the law (*Vander Boegh*), Plaintiffs, without citation to any actual proof, baldly accuse the Cabinet of negligently giving Pine Branch favorable treatment and claim that Defendants have engaged in a "bad-faith effort to mask criminal negligence" by relying on the fact that pre-flood NNCs (and final orders) were not issued for most alleged violations. (DE 149, pp. 3-11).

9

Defendants submit that these NNCs were not issued because the pre-flood conditions of Pine Branch's mine did not violate the regulations Plaintiffs rely upon. (DE 142, pp. 17-24). Plaintiffs cannot point to any actual proof in the record establishing otherwise because there is none.

### B. Plaintiffs resort to distorting the record to prove violations.

Further, despite their baseless accusations that the Defendants have engaged in "dishonesty", duplicity and efforts to mislead the Court, it is the Plaintiffs that repeatedly distort the record in their Response in an effort to support claims of regulatory violations.

For example, to support their false argument that essentially no reclamation had been completed on the Combs Branch mine site at the time of the July 2022 storm event, Plaintiffs assert that the proper way to determine the amount of land reclaimed is to compare the "Est. Acres Disturbed" notation on mine inspection reports for a given permit to the "Acres Bonded" notation. (DE 149, pp. 6-7). This allows them to "compute[] . . . about 10% reclamation" on Permit No. 897-0568 and an "even lower" percentage on Permit No. 897-0569. (Id.). Not only do Plaintiffs fail to cite to any testimony of record suggesting that this is the proper way to determine the amount of land reclaimed, because it is not, the mine inspection reports themselves actually state the number or acres reclaimed:

| MINE INSPECTION REPORT – PERMANENT PROGRAM | | | Hand Delivered? | 897-0568 | |
|---|---|---|---|---|---|
| Company Name and Address | Acres Permitted | Status | Start Time | End Time | Mine Type |
| PINE BRANCH MINING, LLC<br>250 WEST MAIN STREET, SUITE 2000<br>LEXINGTON, KY   40507 | 2507.1 | AP | 08:00 AM | 10:30 AM | SURFACE |
| | Acres Bonded | Inspection Date | Type | | Weather |
| | 2207.02 | 07/21/2022 | P | | CLOUDY |
| | Est. Acres Disturbed | Off-Site Impacts | | | |
| | 2000 | No | | | |
| Insolvent Surety | Photos | Reasons For Inspection | Overall Site Condition | Est. Acres Reclaimed | End Inspection Date |
| No | Yes | IN | | 1600 | 07/21/2022 |

(Case: 5:22-cv-00231-DCR-MAS   Doc #: 117   Filed: 01/08/24   Page: 68 of 126 - Page ID#: 523)

10

| MINE INSPECTION REPORT – PERMANENT PROGRAM | Hand Delivered? | 897-0569 | | | | |
|---|---|---|---|---|---|---|
| Company Name and Address | Acres Permitted | Status | Start Time | End Time | | Mine Type |
| PINE BRANCH MINING, LLC<br>250 WEST MAIN STREET, SUITE 2000<br>LEXINGTON, KY 40507 | 1549.72 | A1 | 09:00 AM | 11:00 AM | | SURFACE |
| | Acres Bonded | Inspection Date | Type | | | Weather |
| | 1256.73 | 09/01/2022 | P | | | CLOUDY |
| | Est. Acres Disturbed | Off-Site Impacts | | | | |
| | 1200 | No | | | | |
| Insolvent Surety | Photos | Reasons For Inspection | Overall Site Condition | Est. Acres Reclaimed | | End Inspection Date |
| No | Yes | IA | | 725 | | 09/01/2022 |

As Pine Branch Director of Permitting and Regulatory Affairs Don Gibson testified, "disturbed" acreage documented on Mine Inspection Reports "means that the ground's been broken. It could have been reclaimed, or it could still be active."[6] (D. Gibson Depo., DE 137-1, at PageID# 942:5-7). Thus, the above reports from July and September 2022 for the two permits at issue actually show that of the 3,200 estimated acres disturbed (2,000 acres on the permit ending in 0568 and 1,200 acres on the permit ending in 0569), 2,325 acres (1,600 acres on the permit ending in 0568 and 725 acres on the permit ending in 0569), or 73%, had been reclaimed.[7] (*See* id. at PageID# 940:5-942:7).[8]

---

[6] In their Response, Plaintiffs state that Mr. Gibson testified as a "company representative." (DE 149, p. 6). While Mr. Gibson is a Pine Branch employee, he did not formally testify as a representative of Pine Branch pursuant to Rule 30(b)(6). (DE 137-1, Page ID# 933:24-934:8). Plaintiffs did not depose any Pine Branch (or Blackhawk) personnel in their capacities as company representatives pursuant to the Rule.

[7] The two reports show 3,463.75 "Acres Bonded" still subject to a performance bond posted with the Cabinet. To be clear, it is perfectly acceptable to have bonded acreage – as one would expect, all active surface mines will be subject to performance bonds. As Defendants have noted, the bond release process is complex and proceeds in phases once active mining is complete on a permit or increment of a permit. (DE 142, p. 22 n.29). Moreover, because acreage must be bonded *before* it is disturbed (405 KAR 10:015 Section 1(1)), "acres bonded" typically includes some acreage that is completely undisturbed ground.

[8] Similarly, Plaintiffs again appear to twist Mr. Gibson's words by insinuating that he noted only 20-25% of reclamation had been completed on the permits at issue at the time of the flood event. (DE 149, p. 6). This was not his testimony. He clarified that approximately 25% of the areas of the permits subject to the Agreed Order on contemporaneous reclamation had been completely reclaimed. (D. Gibson Depo., DE 137-1, at PageID# 941:1-942:7 (noting reclamation of "[a]pproximately 25 percent of the contemporaneous violation" underlying the Agreed Order).

Worse still, Plaintiffs rely, *for a third time*, on an unrelated July 13, 2022 Mine Inspection Report *for a permit not at issue in this case* in an attempt to manufacture an argument that buildup in Pine Branch's sediment ponds violated various regulations.[9] (DE 149, pp. 8-9; *see also* DE 139, p. 7; DE 139-9; DE 122, p. 12 n.29; DE 122-3, pp. 3-4). As the Court can see, this Mine Inspection Report (which is not an NNC), referenced by Plaintiffs, relates to mine permit No. 813-0410 held by a non-party permittee, ICG Hazard LLC:



There has been no dispute by Plaintiffs that the only surface mine permits in the River Caney watershed are Pine Branch Permit Nos. 897-0568 and 897-0569. (DE 142-1, p. 13). This means the Permit No. 813-0410 Mine Inspection Report has no bearing on this case even if it does document regulatory violations (it does not). Moreover, the permit holder, ICG Hazard LLC, is not a party to this action.

Even though Defendants have repeatedly pointed out that the document referenced relates to an ICG Hazard permit, and not to either permit at issue here,[10] Plaintiffs have been undeterred

---

[9] As Defendants have pointed out, there is no evidence to suggest that any Pine Branch sediment pond violated relevant sediment pond regulations by exceeding clean-out levels under 405 KAR 16:020, failing to meet regulatory design storm standards under 405 KAR 16:090, or failing to receive drainage from disturbed areas under 405 KAR 16:070. (DE 142, pp. 19-21).

[10] (DE 126, p. 11 n.11; DE 142, pp. 19-20)

in their efforts to falsely claim the inspection report as proof of wrongdoing in this case. Plaintiffs proclaim that the unrelated report shows that "*the ponds at issue in this matter* were recorded as having buildup of vegetation and woody debris a mere 2 weeks before the flood event". (DE 149, p. 8) (emphasis added). This is simply not true.

Finally, with respect to their revegetation claims, Plaintiffs parrot their earlier argument that 90% revegetation was not achieved at the time of the flood event according to Inspector Daniel Wilson. (DE 149, p. 7). As Defendants have noted (DE 142, p. 22), Mr. Wilson testified that *this was not a violation of any regulation*, but rather a bond release standard that Pine Branch must eventually meet after mining is complete. (DE 136-1, at PageID# 830:21-832:6). Thus, a failure to meet the 90% figure does not establish (or even marginally suggest) a regulatory violation for purposes of the negligence per se claims.[11]

Faced with the reality that they cannot establish a relevant breach of a regulation, Plaintiffs have refused to address Defendants' substantive legal arguments and distorted the record in their Response to Defendants' Motion. For these reasons, and all others stated in the Motion (DE 142, pp. 17-24), Plaintiffs cannot establish any regulatory violations sufficient to establish the breach element of their negligence per se claims.

---

[11] At any rate, Defendants have offered expert and photographic evidence of substantial revegetation and reclamation progress on Pine Branch's permits at the time of the flood event, which Plaintiffs neglect to address. (DE 142-1, pp. 21, 27, 32-42; DE 142-10). It also bears repeating (DE 126, p. 7) that a mining pit and depressions on Pine Branch's permits actually served to detain and retain water during the flood event even though that was not necessarily their primary purpose, resulting in decreased peak flow as well as total runoff volume. (DE 142-1, pp. 20-22 and Table 6). These features demonstrate that one cannot assume that un-reclaimed active mining areas exacerbated flooding in the watershed. Actual hydrologic modeling is necessary.

**III. Plaintiffs Have Failed to Establish that They are Within the Group of People Sought to be Protected by the Cited Regulations and That Their Injuries are the Type Sought to be Prevented.**

In addition to proving violation of relevant regulatory standards and causation, Plaintiffs must prove, *inter alia*, that they fall within the class of individuals the regulations they rely upon are intended to protect and that the injuries suffered are of the types the regulations are designed to prevent. *Bell v. Kokosing Indus.*, NO. 19-53-DLB-CJS, 2022 U.S. Dist. LEXIS 58233, at *15 (E.D. Ky. Mar. 29, 2022) (citing *Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 23-24 (Ky. 2018)). And despite Plaintiffs' attempts to distinguish the authority Defendants cite (DE 149, pp. 12-15), *Bell* stands for the proposition that negligence *per se* claims cannot be premised on statutes or regulations "designed to protect the general public and the environment at large." *Bell*, 2022 U.S. Dist. LEXIS 58233, at *16. As Defendants have argued (DE 142, pp. 24-25), KRS Chapter 350's surface mining laws (and thus the Title 405 regulations they enable) were intended to protect the public and environment at large such that Plaintiffs cannot maintain their negligence per se claims. *In re Renfrow*, 112 B.R. 22, 24 (Bankr. W.D. Ky. 1989); *Dep't for Nat. Res. & Environ. Prot. v. Stearns Coal & Lumber Co.*, 563 S.W.2d 471, 473 (Ky. 1978).

Plaintiffs fail to cite any authority establishing that they are actually within a specific group of people, beyond the public at large, sought to be protected by mining regulations. Instead, Plaintiffs argue that their claims should proceed because there is no civil remedy contained in the regulations under which they could seek recovery. (DE 149, p. 4). The lack of a separate civil remedy, however, is an *additional* element of their negligence per se claims, meaning that Plaintiffs must also prove that they are within a class of individuals the regulations are intended to

protect. *Bell*, 2022 U.S. Dist. LEXIS 58233, at *15 (citing *Hickey*, 539 S.W.3d at 23-24). The Plaintiffs have failed to do so and as a result their claims should be dismissed with prejudice.[12]

## CONCLUSION

WHEREFORE, for the above stated reasons and all others set forth in Defendants' Motion (DE 142), Defendants respectfully request that the Court grant summary judgment in favor of the Defendants, dismissing all claims with prejudice.

Respectfully submitted,

*/s/ Grahmn N. Morgan*
Grahmn N. Morgan (KBA #89219)
Kristeena L. Johnson (KBA #94994)
James M. McClure (KBA #99580)
DINSMORE & SHOHL LLP
100 W. Main St., Suite 900
Lexington, KY 40507
T: (859) 425-1000
F: (859) 425-1099
grahmn.morgan@dinsmore.com
kristeena.johnson@dinsmore.com
mac.mcclure@dinsmore.com

Ashley L. Pack (KBA #89013)
707 Virginia St. E, Suite 1300
Charleston, WV 25301
T: (304) 357-0900
F: (304) 357-0919
ashley.pack@dinsmore.com

and

R. Clay Larkin

---

[12] Contrary to Plaintiffs' argument, the statutory and regulatory scheme at issue *does provide* civil remedies, provided that certain requirements not met here are satisfied. KRS 350.250(1), (3); 405 KAR 7:100; *Vander Boegh*, 394 S.W.3d at 930 n.8. As *Vander Boegh* indicates, plaintiffs who utilize the civil remedy provided in KRS 350.250 must, just the same as in a negligence per se case, show that they were "adversely affected" by any alleged violation. KRS 350.250(3). This causation requirement is consistent with those of similar provisions that provide remedies for surface mining violations. *See Northwest Pipeline GP v. Chevron Mining, Inc.*, No. 12-cv-021, 2013 U.S. Dist. LEXIS 190619, at *4 (D. Wyo. Feb. 26, 2013); *Molinary v. Powell Mt. Coal Co.*, 125 F.3d 231, 237 (4th Cir. 1997); *Ginn v. Consolidation Coal Co.*, 437 N.E.2d 793, 796 (Ill. App. 1982). Since, as set forth herein, Plaintiffs cannot establish that any alleged violation caused their damages in this matter, any pursuit of such civil remedies under the statute would have been futile as well.

Dentons Bingham Greenebaum LLP
300 West Vine Street, Suite 1200
Lexington, KY 40507
T: (859) 231-8500
clay.larkin@dentons.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

This is to certify that I electronically served and filed the foregoing with the Clerk of the Court using the CM/ECF system on this 15th day of April, 2024, which will give notice to all parties of record.

*/s/ Grahmn N. Morgan*
*Counsel for Defendants*